UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES PETTUS,

                       Plaintiff,

                       DECISION AND ORDER
   -v-                      05-CV-6382 CJS

JAMES ESGROW, et al.,

                       Defendants.

---

This is an action pursuant to 42 U.S.C. § 1983, in which Plaintiff, a prison inmate, alleges that Defendants, employees of the New York State Department of Correctional Services ("DOCS") violated his federal constitutional rights. Plaintiff has sued the following twelve individuals: 1) Donald Selsky ("Selsky"), Director of DOCS's Special Housing/Inmate Disciplinary Program; 2) Lucien J. Leclaire, Jr. ("Leclaire"), DOCS Deputy Commissioner of Correctional Facilities; 3) Calvin West ("West"), Superintendent of Elmira Correctional Facility ("Elmira"); 4) Captain Wenderlich ("Wenderlich"), a corrections captain at Elmira; 5) Lieutenant Hughes ("Hughes"), a corrections lieutenant at Elmira; 6) Lieutenant Sirois ("Sirois"), a corrections lieutenant at Elmira; 7) Lieutenant Willis ("Willis"), a corrections lieutenant at Elmira; 8) Sergeant Gilboy ("Gilboy"), a corrections sergeant at Elmira; 9) J.P. Cunningham ("Cunningham"), a corrections officer at Elmira; 10) James Esgrow ("Esgrow"), a hearing officer at Elmira; 11) Superintendent Corcorcan ("Corcoran"), Superintendent of Cayuga Correctional Facility ("Cayuga"); and 12) Lt. McGeever, a corrections lieutenant at Cayuga.

Now before the Court are Defendants' summary judgment motion [#14] and Plaintiff's cross-motion for the same relief [#19]. For the reasons that follow, the applications are denied as premature, the previous grant of permission to allow Plaintiff to proceed *in forma*

*pauperis* is withdrawn, and Plaintiff is directed to pay the filing fee of $250.00 (the applicable filing fee at the time the action commenced), on or before February 20, 2009 or the action will be dismissed without prejudice.

BACKGROUND

Unless otherwise noted the following are the undisputed facts of this action. On February 11, 2004, while Plaintiff was confined at Cayuga, a Corrections Officer Laboon ("Laboon") issued Plaintiff a misbehavior report, charging him with making false statements and being out of place. Defendant McGeever was designated to conduct a Tier II disciplinary hearing on the charges. At the hearing, Laboon's and Plaintiff's testimony established the following facts:  Plaintiff asked Laboon for permission to leave his usual programming in the F-2 dorm to visit the law library, and Laboon agreed. Laboon subsequently called the law library, and learned that Plaintiff was not there. Instead, Plaintiff was in the gym, waiting to obtain a haircut. According to Plaintiff, he had gone to the law library to speak to Corrections Officer Cuddeback ("Cuddeback"), but upon learning that Cuddeback was not there, he instead went to get a haircut. When he became aware that Plaintiff was not at the law library, Laboon contacted the gym and directed Plaintiff to return to the F-2 dorm. On his way back to the dorm, Plaintiff stopped at the law library and spoke with Cuddeback. Laboon subsequently issued the misbehavior report charging Plaintiff with making a false statement and being out of place. During the first day of the hearing, Plaintiff did not indicate that he asked Laboon for permission to go anywhere besides the law library. (Plaintiff's Cross-motion [#19], Exhibits 24-25, 39, 42-44). However, on the second day of the hearing, Plaintiff stated that he told Laboon that he was going to the law library and the

gym. (*Id.*, Ex. 48). Plaintiff further indicated that when he signed out of the dorm, he wrote in the call-out book that he was going to both the law library and the gym. Later during the hearing, Plaintiff asked to call a Sergeant Locastro as a witness, and in that regard, Plaintiff initially stated that he needed Locastro to testify that Plaintiff had written in the sign-out book that he was going to both the law library and the gym. (Plaintiff's Cross-motion [#19] Ex. 26, 29). Subsequently, Plaintiff stated that Locastro could testify regarding Plaintiff's statements to Laboon upon returning to the F-2 dorm. (*Id.*, Ex.45). However, McGeever denied the request to call Locastro as a witness, stating that his testimony would be irrelevant, and that Locastro had no "direct knowledge of what happened when [Laboon] let ya out." [sic] (*Id.*; see also Ex. 46). McGeever found Plaintiff guilty of both charges, stating, in relevant part, that "after hearing all testimony this Hearing Officer feels that Pettus did mislead CO Laboon to get to the barbershop." (*Id.*, Ex. 51). McGeever sentenced Plaintiff to twenty-one days in keeplock. Plaintiff maintains that pursuant to DOCS regulations, 7 NYCRR 253, he should have served such sentence in his cell, instead of in the Special Housing Unit ("SHU").[1]

Plaintiff, who was subsequently transferred to Elmira, commenced a civil action against McGeever in the U.S. District Court for the Northern District of New York. During discovery in that action, the Office of the New York State Attorney General provided Plaintiff with a transcript of the tier disciplinary hearing over which McGeever presided. Upon

---

[1] However, 7 NYCRR § 253.7 specifically provides that such a keeplock sentence may be served in the SHU: "Upon affirming a charge, the hearing officer may impose one or more of the following penalties . . . (iii) confinement to a cell or room continuously *or to a special housing unit under keeplock admission* or on certain days during certain hours for a period of up to 30 days (see Chapter VI, Part 301, section 301.6)." (Emphasis added).

3

receiving the transcript, Plaintiff wrote a number of derogatory comments in the margins, which were directed at McGeever. For example, Plaintiff wrote:

> How 'STUPID' can one be. Can you say 'mindless moron' who should not preside over any hearing - period!!!!! I was find [sic] guilty because 'I am Black.'
>
> ***
>
> Repeat after me Mr. McGeever Sir. 'I am a racist and should not be presiding over any hearings concerning inmates of color.' Say that, sir, 100,000 times, that what I will be requesting from the courts in compensation. You have been duly notified. Stay tuned.
>
> ***
>
> Can you say 'mindless moron' and 'racist' - very simple. Here's the proof. See ya in court.
>
> ***
>
> You tried very hard for me to become loud and disorderly, however, you failed. Now I will be questioning you on the witness stand in federal court. I will be relentless!!!!!

(Esgrow Declaration [#16], Ex. A). On or about May 2, 2005, Plaintiff mailed the transcript with his added comments to the Inmate Records office at Cayuga with a note stating, "Please make sure Lt. McGeever and Sup't Corcoran get a copy of these transcripts." (*Id.*)

Upon receiving the transcript, officials at Cayuga notified officials at Elmira. Specifically, officials at Cayuga faxed four pages of the transcript, containing Plaintiff's handwritten comments, to Elmira. Subsequently, Defendant Gilboy issued Plaintiff a misbehavior report, charging him with "harassment" and "facility correspondence violation." The latter charge accused Plaintiff of falsely designating the transcript and letter as "legal mail." The charges were classified as Tier III violations, which Plaintiff maintains was erroneous, since the charges did not involve serious conduct. (Complaint [#1] at 3) ("There was no assault on staff, serious attack on other inmates, weapons possession or possession of illegal drugs."). Defendant West designated Defendant Esgrow to conduct the hearing.

4

During the hearing, Plaintiff admitted that he had written the comments on the transcript and sent them to McGeever and Corcoran. However, Plaintiff maintained that he was innocent of harassment, since he had not engaged in a pattern of harassment. According to Plaintiff, harassment requires "<u>repeated</u> attacks to <u>frustrate, annoy, torment</u>, etc." (Complaint [#1] at 5) (emphasis in original). Plaintiff also argued that he was entitled to send the package as "legal mail," since he had received the transcript from the Attorney General's office. (*Id*. at 3) ("[T]ranscripts are confidential and privilege[d] thus legal mail."). Gilboy and Plaintiff testified at the hearing. During Gilboy's testimony, Esgrow denied Plaintiff's request to ask several questions, finding them irrelevant. Plaintiff asked to have a number of other witnesses testify, including McGeever and Corcoran. In that regard, Plaintiff stated that he wanted McGeever to testify to the fact that Plaintiff had commenced a lawsuit against him, and that he wanted Corcoran to testify to the fact that Plaintiff had mailed an entire hearing transcript, of which only four pages contained derogatory comments. (Esgrow Declaration [#16], Ex. C). Esgrow denied the requests, finding that such testimony would not be relevant. At the hearing, Plaintiff requested assistance in presenting a defense, but Esgrow informed him that he was not entitled to such assistance, since he was released in general population pending the conclusion of the hearing. (*Id*. at 2). On May 31, 2005, Esgrow found Plaintiff guilty of both charges, and sentenced him to, *inter alia*, six months in the SHU, with four months suspended. Plaintiff appealed, and on July 13, 2005, Selsky affirmed the conviction and sentence. (*Id*., Ex. D).

On May 25, 2005, while the above Tier III hearing was still pending, Defendant Cunningham issued Plaintiff a misbehavior report, charging him with three infractions:

5

refusing a direct order, being out of place and "movement regulation violation." Apparently, Cunningham issued Plaintiff the misbehavior report after Plaintiff failed to comply with a direct order. However, Plaintiff contends that he did not hear Cunningham's order, because he is deaf in one ear. Plaintiff was placed in keeplock status pending the disposition of the charges, a decision which Plaintiff attributes to both Cunningham and Defendant Sirois. (Complaint [#1], June 30, 2005 addendum at 3-4). Defendant Willis presided over a Tier II disciplinary hearing of the charges. On June 2, 2005, Willis found Plaintiff guilty, and sentenced him to 21 days SHU confinement. However, because Plaintiff had been found guilty of the Tier III infraction on May 31, 2005, and was already required to serve a two-month sentence for that conviction, Willis directed that Plaintiff's 21 sentence would run from July 31, 2005 until August 20, 2005. Plaintiff contends that this calculation was erroneous, because it did not credit him for the time that he spent in keeplock status pending the outcome of the hearing. Plaintiff appealed, and on June 6, 2005, Defendant Wenderlich affirmed the conviction and sentence.

On July 22, 2005, Plaintiff commenced this action. Plaintiff generally alleges that Defendants conspired to violate his rights under the First, Fourth, Sixth and Fourteenth Amendments, in order to retaliate against him for bringing his lawsuit against McGeever. More specifically, Plaintiff alleges the following: 1) McGeever notified officials at Elmira that Plaintiff had sent the harassing document (transcript with Plaintiff's comments), and instructed them to "put Plaintiff in his place"; 2) Corcoran faxed officials at Elmira only four pages of the 35-page document; 3) Gilboy issued a false misbehavior report; 4) Hughes mis-classified the charges in the misbehavior report as Tier III violations, the most serious type

6

of disciplinary infraction; 5) West denied Plaintiff's request to personally preside over the tier hearing, and instead designated Esgrow, knowing that Esgrow was racist; 6) Esgrow denied Plaintiff 's rights at the tier hearing, by denying him the opportunity to call witnesses and ask questions, and by imposing a harsh and illegal sentence; 7) Cunningham issued Plaintiff a false misbehavior report and improperly placed him in keeplock without a hearing; 8) Sirois placed Plaintiff in keeplock without a hearing; 9) Willis denied Plaintiff his rights at the Tier II hearing and imposed an improper sentence; and 10) Wenderlich improperly affirmed the Tier II conviction and sentence; 11) Leclaire "neglected his duties as the person who reviews appeals of Tier III's" [sic] by affirming Plaintiff's Tier III conviction; and 12) Selsky improperly affirmed the Tier III conviction.[2]

In the Complaint, Plaintiff also alleges that he suffers from the following medical conditions: vertigo, Meniere's disease (an inner-ear disorder that can affect hearing and balance), and tinnitus. Plaintiff submitted medical records indicating that since 2003, he has suffered from tinnitus and vertigo, which cause him to periodically feel dizzy and vomit. At least since 2003, Plaintiff has also complained of low back pain, for which he has received pain medication. (*See*, Complaint, Medical chart entries dated October 30, 2003 ("[Inmate] says condition is getting worse; says he lost his balance and fell backwards hurting his back on Tues 10/28[/03]"); October 31, 2003 ("low back pain - [inmate] still [complaining of] pain [left] iliac area- states he fell on Tuesday 10/28/03."); and November 6, 2003). On May 7,

---

[2]Attached to the complaint were, *inter alia*, the following documents concerning Leclaire and/or Selsky: 1) a letter, dated June 27, 2005, from Leclaire to Plaintiff, responding to a letter which Plaintiff had written objecting to being placed in keeplock pending the hearing on the May 25, 2005 misbehavior report, advising Plaintiff that Wenderlich had already affirmed the hearing outcome and that no further appeal was available; and 2) a letter, dated June 28, 2005, from Leclaire to Plaintiff, informing Plaintiff that Leclaire had forwarded a letter from Plaintiff, concerning the Tier III hearing, to Selsky, who was considering Plaintiff's appeal.

2004, Plaintiff again claimed that he injured his lower back when he fell in his cell. (Complaint, Medical chart entry dated May 17, 2004). Medical staff gave Plaintiff Motrin and ordered an x-ray of his lumbo-sacral spine. (*Id*.). On February 10, 2005, Plaintiff wrote to Dr. Canfield, a DOCS physician, and stated, in relevant part, "My tinnitus condition has impaired my daily activities, causing me to fall on four (4) different occasions, causing injury to my back." (Complaint, Exhibit 30). DOCS medical staff has provided Plaintiff with medications, including anti-vertigo medicine, motrin and floricet , have referred him to medical specialists several times, and have obtained x-rays and other diagnostic testing. Nevertheless, in his Complaint, Plaintiff states, in relevant part, that his medical condition places him in imminent danger:

> [Plaintiff] suffers from vertigo, Meniere's and tinnitus diseases. Plaintiff has fell and injured his back and received no medical attention because of keep-locked status and was not afforded an escort to the hospital. Plaintiff has hit his head three times on three different occasions and [received] no medical attention, because of keep-locked status. Plaintiff is being denied medical attention and medicine and worries he may die in his cell because of dizzy spells and black-outs.
> ***
> Now they will place me in SHU where I will be completely isolated, and [I] fear for my safety and health. I may even die. I am currently keep-locked and continue to be denied proper medical care.

(Complaint, handwritten addendum at 1-2).

Along with his Complaint, Plaintiff submitted an application to proceed *in forma pauperis*. The Court initially denied the application pursuant to 28 U.S.C. § 1915(g), since Plaintiff had at least four prior lawsuits dismissed under the "three strikes rule." See, 28 U.S.C. § § 1915(e) & (g). The Court noted in its decision that the "three strikes provision" does not apply where an inmate alleges that he is in imminent harm of serious physical

injury. However, the Court concluded that Plaintiff had made no such allegation. The Court also noted that Plaintiff's medical complaints were then already the subject of another lawsuit. Plaintiff appealed, and the Second Circuit Court of Appeals remanded the matter to this Court "for determination of whether Pettus's complaint, which asserts that he faces imminent danger of physical injury due to his alleged receipt of inadequate medical treatment and care, falls within the exception to the 'three strikes' provision of 28 U.S.C. § 1915(g)." (Second Circuit Mandate [#8]). On remand, the Court granted Plaintiff's application to proceed *in forma pauperis*, finding that his allegations of imminent danger "f[e]ll within the exception to the 'three strikes' provision of 28 U.S.C. § 1915(g)." (Decision and Order [#9]).

Subsequently, Defendants filed the subject summary judgment motion [#14], and Plaintiff filed the subject cross-motion for summary judgment [#19]. One of the arguments raised by Defendants is that the Court should revoke Plaintiff's poor-person status. (Defendants' Memo of Law [#18] at 1-2, 6-7). In response, Plaintiff contends that the Court should not revisit the issue of imminent danger. (Plaintiff's Cross-motion [#19] at 3).

DISCUSSION

Plaintiff has had more than three actions dismissed for the grounds delineated in 28 U.S.C. § 1915(e)(2)(B) and 1915A(a) – that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a); *see also Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007); *Pettus v. Morgenthau*, 05-CV-6598Fe (W.D.N.Y. Jan. 12, 2007) (Arcara, C.J.) (Unpublished) (Discussing Plaintiff's previously dismissed cases). Where a prisoner seeks to proceed *in forma pauperis*, but has had more

9

than three actions dismissed on these grounds, permission to proceed *in forma pauperis* must be denied "unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). However, where an inmate alleges such "imminent danger," there must be some nexus between the claims in the Complaint and the allegation of imminent danger. *See, Pettus v. Morgenthau*, 05-CV-6598Fe at 11 ("Plaintiff is straining to assert that the complained-of actions of all these defendants form a straight line of cause and effect to the dangers he fears. Nevertheless, the claims against these defendants are simply too far removed from the alleged imminent dangers to warrant an exception to the 'three strike' rule in this action."); *see also, Id*. at 13 ("Where there is no nexus between the allegations and a defendant or claim in the action, the statements do not give rise to a claim that the plaintiff is facing imminent danger of serious physical injury for the action.") (*citing McNeil v. U.S.*, No. 5:05CV0773(NAM)(GJD), 5:05CV0774(NAM)(GJD), 2005 WL 3088698 at *2 (N.D.N.Y. Nov. 17, 2005)).

     In this case, upon remand from the Second Circuit, the Court initially concluded that there was a nexus between the claims in the Complaint and the allegations of imminent danger due to medical ailments. However, that was because Plaintiff worded his Complaint in a manner calculated to make it appear that such a nexus existed. Upon more carefully reviewing the Complaint and the parties' summary judgment motions, it is now clear that Plaintiff's long-standing medical complaints have nothing to do with the Defendants or claims in this action. In that regard, Plaintiff is not suing any doctors or medical providers in this action, nor is there any indication that any of the Defendants was personally involved in Plaintiff's medical care. Nor, for that matter, is there any indication that Plaintiff's medical

condition posed any imminent danger to him at the time he commenced this action. To the contrary, Plaintiff's submissions establish that his medical conditions have existed for years, and that he has received medical care. Instead, Plaintiff asserts a convoluted theory, in which Defendants are connected to his medical condition because they were involved in his disciplinary hearings, which resulted in him being placed in keeplock and SHU, where he allegedly is unable to receive medical care. However, to the extent that Plaintiff is suggesting that DOCS inmates housed in keeplock and SHU have no access to medical care, his claim is frivolous. In any event, Plaintiff has not shown that any Defendant in this action denied him medical care while he was in keeplock or SHU. Consequently, Plaintiff is not entitled to proceed *in forma pauperis* in this action.

## CONCLUSION

Defendants' summary judgment motion [#14] and Plaintiff's cross-motion for the same relief [#19] are denied as premature. The previous grant of permission to proceed *in forma pauperis* is withdrawn, and Plaintiff is directed to pay the filing fee of $250.00 (the applicable filing fee at the time the action commenced), on or before February 20, 2009 or the action will be dismissed without prejudice.

So Ordered.

Dated:     January 16, 2009
           Rochester, New York

/s/ Charles J. Siragusa
    CHARLES J. SIRAGUSA
    United States District Judge